## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHERIE JACKSON | : | |
| | : | |
| Plaintiff, | : | CASE NO. |
| | : | |
| v. | : | TRIAL BY JURY DEMANDED |
| | : | |
| THE DEPARTMENT OF SERVICES: | | |
| FOR CHILDREN, YOUTH AND | : | |
| THEIR FAMILIES, AND | : | |
| | : | |
| ERIC V. BORDLEY      , | : | |
| IN HIS INDIVIDUAL | : | |
| CAPACITY, AND | : | |
| ANDREW C. DOWELL, | : | |
| IN HIS INDIVIDUAL CAPACITY | : | |
| AND AMANDA COKER | : | |
| IN  HER INDIVIDUAL CAPACITY | : | |
| | : | |
| Defendants. | : | |

## **COMPLAINT**

## **THE PARTIES**

1.      Plaintiff, Cherie Jackson ("Plaintiff" or "Jackson") was at all times relevant to this complaint a resident of Dover, Delaware. She is a white female.

2.      Defendant, The Department of Services for Children, Youth and their Families ("Defendant" or "DSCYF") is a public corporation organized and existing under the laws of the State of Delaware.

3.      Defendant Eric V. Bordley, is a Youth Rehabilitation Supervisor at the State of Delaware. He is being sued in his individual capacity.

4.      Andrew Dowell, is a Youth Rehabilitation Supervisor at the State of Delaware. He is being sued in his individual capacity.

5.      Amanda Coker, is a Youth Rehabilitation Supervisor at the State of Delaware. She is being sued in his individual capacity.

## JURISDICTION

3.      This Court has jurisdiction based upon the existence of a question arising under the laws of the United States of America.  This action arises under Title VII, of the Civil Rights Act of 1954, 42 U.S.C. §2000e, et.seq., as amended by the Civil Rights Act of 1991, §704 of Title VII. Accordingly, this Court has jurisdiction over the controversy based upon the provisions of 42 U.S.C. §2000e-5(f)(3) as well as 28 U.S.C. §§1331 and 1334.

## VENUE

4.      The unlawful employment practices alleged herein were committed within the State of Delaware.  Accordingly, venue lies in the United States District Court for the District of Delaware under 42 U.S.C. §1339(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      Prior to the filing of this action, the plaintiff timely filed a written charge of discrimination and retaliation with the Delaware Department of Labor and the Equal Employment Opportunity Commission on August 6, 2020 which occurred during her employment with DSCYF.

6.     On or about March 25, 2022 the U.S. Department of Justice in the Civil Rights Division issued Plaintiff a "Right to Sue Notice" which was received by Plaintiff. Right to Sue Notice attached as Exhibit 1.

## THE FACTS

7.     Cherie Jackson (white female) was hired by DSCYF as a Youth Rehab Counselor on October 31, 2019.

8.     Almost immediately, Jackson faced a hostile work environment based on her race, religion, and protected free speech.

9.     In December 2019, Jackson transferred from Youth Rehab Counselor I to Correctional Officer/Youth Food System Specialist I.

10.     Co-worker Dawn Rowe approached Jackson and stated, "you stole that job from that young black man, such a shame".  Jackson responded, "I didn't steal anything from anyone", and Rowe replied "that's between you and God".

11.     Jackson informed Rowe that she was an atheist and walked away.

12.     Rowe mumbled "it shows" to which Jackson ignored.

13.     Jackson immediately reported this to Supervisor Amanda Coker.

14.     From December 2019 to the present, Hector Ortiz repeatedly gets on the radio and asks Jackson if she's serving dinner in an extremely demeaning fashion. The announcement is purposely demeaning against Jackson because she is a white female Trump supporter.

15.    Jackson has repeatedly told him that she is not responsible for serving the meal.

16.    Ortiz has become unprofessional and belittling towards Jackson by questioning her in front of staff and the youth.

17.    Jackson has continually complained to the Odessa House Supervisor Andrew Dowell and her Supervisor and Facility Program Director, Amanda Coker.

18.    On May 9, 2020, at 1 pm, Dawn Ortiz was unprofessional, belittling and undermined Ms. Jackson's authority in front of the youth.

19.     Ortiz reprimanded Jackson that she needed to tell the youth to watch their boundaries when the youth in question was on one-on-one observations and needed to be within arm's distance.

20.    The incident immediately followed Jackson reporting Dawn Ortiz for negligently monitoring the same youth which resulted in the youth performing self-harm.

21.     Ortiz went on to lecture the youth, while standing behind Jackson making statements such as "you don't know how staff lives", "you don't know where they go or what they do", "I'm trying to look out for ya'll", "you need to protect yourselves" and "some of us take this more serious than others". The comments were obviously in reference to Jackson's race and background.

22.    On May 18, 2020, Eric Bordley, Dawn Rowe's Direct Supervisor,

heard that Jackson voted for President Trump in the prior presidential election.

23.     Bordley repeatedly questioned Jackson if she was going to vote for Biden or Trump in the next presidential election.

24.     Since Bordley found out that Jackson supported Trump, Jackson has been subjected to a hostile work environment based on race and her support of Trump. She has been the consistent target of racial harassment from co-workers and Bordley.

25.     Supervisor Andrew Dowell announced to the entire staff present that Jackson had voted for President Trump.

26.     Afterwards, Andrew Dowell and Fateem Brockington told staff member James Fischer and Bordley that Plaintiff voted for Trump.

27.     Bordley interrogated Jackson on why she voted for Trump and she gave him several reasons.

28.     To which Bordley responded, "he's pro-white, he has ties to white supremacy groups".

29.     Bordley instructed Jackson to "line up her bi-racial children and march them to the gas chamber".

30.     He also stated to Jackson "don't look at your watch now, you're uncomfortable now, I bet you wish you didn't vote for him now".

31.     He also referred to Trump as Hitler and stated that he gave the congressional medal of honor to a white supremacist.

32.     Bordley's comments were made in front of co-worker James Fisher.

33.     Immediately, Plaintiff complained about the harassment to her supervisors.

34.     After Plaintiff's complaint, Bordley pulled Fisher into his office for a conversation.

35.     Plaintiff could hear Bordley's conversation with Fisher. Bordley even stated within earshot of Plaintiff, "oh hi little nigger you make my teeth look white" and began chanting "Nigger, nigger, nigger".

36.     Bordley told Jackson that she needed to "do right by her children".

36.     Bordley said "you'd probably tell your kids now you listen to these people, you go stand in that line now and don't say anything, run along now children" and stated I'd be "just like all the other holocaust mothers knowing they were marching to their deaths but too afraid to take a stand".

37.     Jackson complained to Dr. Walker, Administrator of Silver Lake Treatment Consortium, via an email, about the harassment and hostile work environment, but nothing changed.

38.     In Jackson's e-mail to Dr. Walker, Jackson spoke about feeling uncomfortable, unsafe and intimidated by colleagues and supervisors.

39.     Jackson also stated this was not the first time she felt like this at work; harassed by staff she directly supervises as well as, that when she made harassment complaints about staff in the past the harassment continued further creating a hostile work environment.

40.     Amanda Coker advised Jackson that she had spoken with Dr. Walker about Jackson's concerns.

41.     Dr. Walker met with staff individually and together, but not once spoke with Jackson directly regarding her concerns.

42.     Furthermore, Dr. Walker seemed to avoid Jackson when she was at the facility.

43.     On May 19, 2020, Jackson was dropping off salad at Odessa House to go with pizza that had been ordered for dinner.

44.     Staff member, Hector Ortiz, refused to feed the youth stating multiple times "we're waiting on you".

45.     Jackson served dinner to avoid confrontation.

46.     During dinner he interrupted requests youth were making to Jackson.

47.     On May 27, 2020, Eric Bordley came into the MRTC kitchen where Jackson was alone and apologized and gave her a hug.

48.     Jackson was extremely uncomfortable with the hug.

49.    Staff Andrew Keegan and Chris Corbett observed the incident but were not within ear shot.

50.    Keegan and Corbett told Plaintiff that Jackson the hug "looked forced like he was doing it for the cameras".

51.    Eric Bordley also stated "you can tell Amanda we're good now".

52.    Jackson replied "oh ok" and Bordley said "do I need to come over there and choke you?".  Jackson tried to laugh it off because she wanted him to leave as she felt unsafe.

53.    Jackson felt as though no one was taking her allegations seriously and she felt like the statement about choking was threatening.

56.    On June 6, 2020, at around 6:30 pm, while eating dinner with the youth at Odessa House staff, Dawn Ortiz, told Jackson to "stop talking to the youth", further stating "we have a program to follow, routines to get done and ya'll are just down here chit chatting".

57.    Later that night, Jackson sent Amanda Coker a text message to tell her she was sending an e-mail about another incident with Dawn Ortiz and she responded, "she loves to have a target and you are it".

58.    On June 9, 2020 around 9:45 pm, there were 'I can't breathe, black lives matter' masks on the Odessa House staff desk including Jackson's desk.

61.     There were anti-Trump articles and George Floyd articles on the staff desk including Jackson's desk.

62.     Jackson took pictures and reported it to Amanda Coker who was onsite.

63.     Coker stated she did not want to remove the items out of fear of being labeled as racist.

64.     On June 14, the articles were still there and Jackson took another picture of them.

65.     On June 14, 2020 at 9:23 am, Jackson was switching radios out at the Odessa House staff station.

66.     Staff Gabby Cooper, Charlise Washington and Rynesha Thomas were all at the staff station. While approaching the desk staff Gabby Cooper stated "wow Ms. Cherie the girls are out today".

67.     She then began to state that she wanted to go to Miami and get a boob job and lift.

68.     At which point she said "Ms. Cherie you want to come get the lift with me, you need the lift".

69.     Charlise Washington then raised her hands and began to jump up and down and stated "Ms. Cherie do this".

70.     Other incidents include but not limited to:

a.     Being told to "do right by my bi-racial children".

b.     Being told to "buy more diverse food".

c.     Being called "Karen" in a disparaging way; no "Karen" works in the building.

d.     Being told to "get right with God".

e.     Sexual harassment by a female co-worker, on two separate occasions after she filed a complaint.

## COUNT I: RACE DISCRIMINATION- HOSTILE WORK ENVIRONMENT

71.     Plaintiff restates and realleges paragraphs 1–70, inclusive, as though set forth here in full**.**

72.     Such acts as described above by defendants, its agents and employees, constitute unlawful race discrimination and racial harassment against Plaintiff in violation of Title VII, 42 U.S.C. §2000(6), et seq.

73.     As a direct and proximate result of Defendants' unlawful discrimination, in the nature of racial discrimination, by and through its agents and employees.

74**.**     Plaintiff has been injured and has suffered and  will continue to suffer pain, humiliation, anxiety, depression, mental anguish, emotional distress, physical manifestation of anxiety and the loss of past and future wages and benefits.

## COUNT II: RELIGIOUS DISCRIMINATION-
## HOSTILE WORK ENVIRONMENT

75.     Plaintiff restates and realleges paragraphs 1–74, inclusive, as though set forth here in full**.**

76.     Such acts as described above by defendants, its agents and employees, constitute unlawful sex discrimination against Plaintiff in violation of Title VII, 42 U.S.C. §2000(6), et seq.

77.     As a direct and proximate result of Defendants' unlawful discrimination, in the nature of religious discrimination, by and through its agents and employees, Plaintiff has been injured and has suffered and  will continue to suffer pain, humiliation, anxiety, depression, mental anguish, emotional distress, physical manifestation of anxiety and the loss of past and future wages and benefits.

## COUNT I II- RETALIATION AGAINST DEFENDANTS BORDLEY AND
## AMANDA COKER
### (First Amendment/Section 1983)

78.     Plaintiff re-alleges and adopts the allegations of paragraphs 1-77 above as if fully set forth herein.

79.     Plaintiff engaged in the protected activity of voting for Donald J. Trump and generally supporting Trump in his election campaign and presidential policies.

80.     It cannot be questioned that one's support for a political party and/or candidate for election along with policies qualifies as matters of public

concerns.

81.     Plaintiff's actions were not disruptive to the operations of DSCYF.

82.     In fact, it was Bordley whom solicited whether Plaintiff voted for Trump.

83.     Once Bordley announced Plaintiff was voting for Trump, Andrew Dowell announced to the entire staff that Plaintiff was voting for Trump as a way to expose Plaintiff to the staff as a Trump supporter.

84.     As a result of the exposure, Plaintiff was subject to a hostile work environment in retaliation for supporting Trump.

85.     Defendants Bordley and Dowell accused Plaintiff of being a racist for supporting Trump. Dowell instructed Plaintiff to "line up my bi-racial children and march them to the gas chamber."

86.     Defendant Bordley and Dowell knew they created a hostile work environment as they told Plaintiff, "don't look at your watch now, your uncomfortable now, I bet you wish you didn't vote for him now".

87.     Bordley also said to Plaintiff in a mocking way "oh hi little nigger you make my teeth look white" and began chanting "Nigger, nigger, nigger". Bordley told Jackson that she needed to "do right by my children".

88.     Amanda Coker ordered Plaintiff to not wear an American flag face mask because other co-workers viewed it as a symbol of being a Trump supporter.

89.     Plaintiff was retaliated against by the State of Delaware and State actors acting under color of law for exercising her protected activity of political speech via a hostile work environment and harassment.

90.     Despite Plaintiff's complaints of discrimination to her supervisors, the hostile work environment and harassment continued.

91.     Bordley and Dowell were directly involved in the decision to retaliate against Plaintiff for her protected activities, moreover, Bordley and Dowell have chosen to direct continued hostility and heightened scrutiny toward Plaintiff in the subsequent months, and have sought to isolate, ostracize, and undermine Plaintiff, as well as to deny her opportunities for growth and advancement.

92.     The conduct of Bordley and Dowell violated Plaintiff's clearly established constitutional rights, of which a reasonable person would have known.

93.     The conduct in which Defendants engaged would deter a reasonable person from engaging in lawful protected activities.

94.     Plaintiff's request for relief in this Count is limited to prospective injunctive relief for prospective training and analysis with the goal of addressing discrimination and retaliation.

**WHEREFORE**, Plaintiff requests this Honorable Court to enter a judgment in his favor and against the defendant as follows:

a.      Declare the conduct engaged in by the defendant be in violation of the plaintiff's statutory rights.

b.      Ordering the rehiring of the plaintiff at a level which is commensurate with his time and experience, or in lieu thereof granting the plaintiff front pay, to compensate his pecuniary losses, which he will suffer as a result of the wrongful conduct of the defendant.

c.      Award the plaintiff back pay compensation for his pecuniary losses from the date of the wrongful conduct described herein until the date of any judgment.

d.      Award the plaintiff sufficient funds to compensate him for his losses, pain and mental suffering, which cannot otherwise be compensated by equitable relief.

e.      Award the plaintiff compensatory and punitive damages not otherwise specified.

f.      Award the plaintiff any and all other liquidated damages, which would make the plaintiff "whole".

g.      Award the plaintiff attorney fees, the costs of this action, pre-judgment and post judgment interest, and;

h.      Such other and further relief as this Court feels proper.

**THE POLIQUIN FIRM LLC**

/s/ Ronald G. Poliquin
RONALD G. POLIQUIN, ESQUIRE
Delaware Bar ID No. 4447
1475 S. Governors Ave.
Dover, DE  19904
(302) 702-5501
*Attorney for Plaintiff*


Dated: June 23, 2022